UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CORY O'NEAL BREWER, | Case No. 3:20-cv-00396-MMD-CLB |
| Petitioner, | ORDER |
| v. | |
| WILLIAM GITTERE, *et al.*, | |
| Respondents. | |

## I.   SUMMARY

*Pro se* Petitioner Cory O'Neal Brewer was convicted by nolo contendere plea in Nevada state district court for second-degree murder. (ECF No. 86-13.) This matter is before the Court on (1) Respondents' motions to seal Exhibit 11 (ECF No. 79) and for enlargement of time to file supplemental documents (ECF No. 81); and (2) for disposition of the merits of the remaining grounds[1] of Brewer's petition for writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (ECF No. 39). Brewer contends he would not have pleaded but for counsel's coercion and ineffective assistance in failing to, *inter alia*, file motions and pursue defenses. The Court will grant Respondents' motions (ECF Nos. 79, 81) and deny the Petition (ECF No. 39) and a certificate of appealability.

## II.   BACKGROUND

### A.   Facts Underlying the Offense[2]

On July 5, 2015, Brewer's grandmother, Rafaela Neller, called 911 to report that Kirsten Krasovec was not breathing. Neller and Brewer greeted paramedic Michael

---

[1]The Court dismissed Grounds 1(B)(3)-(4) and 2(B)(3) as untimely; 2(C) and 3(A)-(D) as noncognizable; 2(B)(4)-(5) as duplicative; and 1(A)(6), 1(B)(2), and 2(A)(4)-(5) as unexhausted. (ECF No. 60, 65.)

[2]The facts underlying the offense are taken from the stipulated factual basis for Brewer's plea, attached as Exhibit 1 to the Guilty Plea Memorandum, and the Presentence Investigative Report (PSI). (ECF Nos. 80-1 at 7-9, 86-9.)

Hamilton at the apartment shared by Brewer and Krasovec. Hamilton found Krasovec's body on the bed in the master bedroom, and the room in disarray. He observed obvious rigor mortis, bruises to Krasovec's eyes and throat, and blood and secretions on the bed near her head. Amphetamine Salts or Adderall pills and a bottle were in a trashcan. Brewer told Hamilton he spoke with Krasovec that morning, took a long motorcycle ride, and found her body upon his return. (ECF Nos. 80-1 at 7, 86-9 at 9.)

Reno Police Department officer Javen Lindsay contacted Brewer at the scene. Brewer told Lindsay they were up late the night before, had a morning ritual, and Krasovec fell asleep in their bedroom while Brewer napped on the couch. Brewer said he left for a motorcycle ride around 10:00 a.m., returned around 4:30 or 5:00 p.m., found Krasovec with "black on her face" and "her body hard," and called Neller. (*Id.*)

Neller told Detective Ernie Kazmar that Brewer and Krasovec were being evicted from their apartment and she helped them pack the prior evening. Neller said Krasovec had no noticeable injuries while they were packing. Neller returned the next day around 12:45 p.m. to continue packing but received no responses at the door or to her phone calls to Brewer and Krasovec. Neller went home and received a call around 6:00 p.m. from Brewer. Neller returned to Brewer's apartment, found Krasovec in the master bedroom bed, and called 911. Neller told the 911 dispatcher that Krasovec was not breathing and changed color. Neller complied with the dispatcher's instruction to turn Krasovec on her back for cardiopulmonary resuscitation ("CPR"). Brewer told Detective Kazmar the same story he told Hamilton and Lindsay, and that he found pills on the floor, threw some in the trash, and flushed some down the toilet. (*Id.*)

The Washoe County Medical Examiner discovered that Krasovec suffered multiple injuries including: (1) a large hematoma to the right side of her throat and larynx, indicating asphyxiation; (2) petechiae to her eyes and cheek; (3) internal perforation of her abdomen yielding approximately 1,000 milliliters of blood; (4) small lacerations to her liver and spleen; (5) contusions on her face, cheeks, jaw, both eyes, and lips; (6) a fracture to a left posterior rib; and (7) small lacerations to the inside and outside of her rectum. The

medical examiner concluded the manner of death was homicide caused by "multiple injuries due to blunt force trauma including strangulation and impact injury causing traumatic asphyxia and intra-abdominal and retroperitoneal hemorrhage." (ECF No. 80-1 at 7-8.)

Detective Kazmar reinterviewed Brewer after learning the autopsy findings. This time, Brewer told Kazmar he and Krasovec consumed methamphetamine after the morning ritual. Brewer said he was passing out, and Krasovec convulsed, so he slapped her face to wake her up. He said she responded to CPR three times. During the interview, Brewer cried and said he did not kill Krasovec but tried to save her. He denied battering Krasovec other than slapping her face to wake her up. He confirmed that, contrary to his prior statements, he stayed at the apartment the entire day during which he placed the bong used to ingest methamphetamine in a garbage bag, put Krasovec's phone in his truck, and placed her in the bed. After the interview, Brewer told Neller he was going to be arrested, that he lied about the motorcycle ride, he needed a good defense lawyer, and that Satan did this. (ECF Nos. 80-1 at 8, 86-1 at 10-11.)

Police found Krasovec's phone in Brewer's truck. Photographs and videos on Krasovec's phone confirmed she and Brewer performed a ritual on the morning she died, and she had no apparent injuries during the ritual. The video depicted Brewer holding a firearm, which was prohibited because he is an ex-felon, and police found two firearms in the apartment during execution of a search warrant. Police found no injuries on Brewer. Brewer denied causing Krasovec's injuries. Police found no signs of forced entry at the apartment. Neller's telephone record confirmed her calls to Brewer and Krasovec. Detectives learned the apartment complex had a file containing reports of physical altercations between Brewer and Krasovec. (ECF No. 80-1 at 8, 11.)

After Brewer's arrest, a friend of Krasovec informed detectives that Brewer was violent with Krasovec. The friend claimed to have seen him head-butt her at a party, and that Krasovec's son saw Brewer choke Krasovec. The friend said Krasovec confided she planned to leave Brewer the weekend of her death. The friend believed Krasovec's

decision to leave Brewer may have been the catalyst for Brewer's actions. (*Id.*)

### B.    Plea of Nolo Contendere to Second-Degree Murder

Brewer was arrested on July 7, 2015, and appeared before the state justice court on July 9, 2015. A complaint charged him with open murder for Krasovec's death, and ownership or possession of a firearm by a prohibited person. A separate case charged him with battery by a prisoner. Brewer was held without bail and represented by a public defender. Brewer's preliminary examination hearing initially scheduled for July 21, 2015, was vacated. Brewer waived preliminary hearing in the state justice court in August of 2016—more than a year after his arrest—and the State filed an amended complaint. (ECF Nos. 80-1 at 10, 86-1 at 3, 86-2 at 2-3.)

Before arraignment in the state district court, Brewer retained counsel to replace the public defender. Retained counsel requested continuance of the arraignment to November of 2016, for review of discovery. Brewer confirmed he was "comfortable with what's happening" and "in agreement with" counsel's request for continuance. (ECF Nos. 86-2 at 2-3, 86-5, 86-6, 86-7 at 6, 86-8 at 3-4.)

At the November arraignment, the parties filed in the state district court a nolo contendere plea memorandum ("Plea Memorandum"), signed by Brewer, in which he agreed to plead nolo contendere to second-degree murder in exchange for the State's dismissal of the charges of open murder, possession of a firearm by a prohibited person, and battery by a prisoner. (ECF Nos. 86-9, 86-10 at 3-4.)

By signing the plea memorandum, Brewer agreed he was not expressly admitting guilt. However, he authorized the court to treat him as if he were guilty. He admitted the State possessed sufficient evidence to convict him of first-degree murder, i.e., the State could prove beyond a reasonable doubt he "did willfully, unlawfully, and with malice aforethought, kill and murder Kirsten Krasovec . . . by means of blunt force trauma including strangulation and impact injury, thereby inflicting mortal injuries" resulting in her death. Brewer confirmed in the plea memorandum that he understood, and stipulated to, the factual basis for the plea to second-degree murder, as in Exhibit 1 to the plea

memorandum. By signing the plea memorandum, Brewer confirmed he (1) discussed and considered "all possible defenses and defense strategies" with his counsel; (2) was satisfied with counsel's advice and representation leading to the case resolution; and (3) was aware he should advise the Court at that time if he was not satisfied with counsel. Brewer confirmed his plea was made "freely, voluntarily, knowingly and with full understanding of all matters set forth in the Information and in the plea memorandum," and he read completely and understood everything contained in the plea memorandum. (ECF Nos. 86-4; 86-9 at 3-4, 6-7.)

At the change of plea hearing, Brewer verbally confirmed, among other things, he (1) understood the plea; (2) was comfortable with his counsel's representation; (3) had no doubt about his counsel's willingness to assist him in all matters relating to his case; (4) read and understood the plea memorandum and attachments; and (5) signed the plea memorandum while the attachments were in place. The state district court accepted the plea after finding Brewer understood the plea and found a factual basis for the plea as set forth in Exhibit 1 to the plea memorandum. Brewer confirmed that, although he claimed innocence, his plea was voluntary because he believed it was in his best interest, as the State could "most likely" convict him of the more serious charge of first-degree murder, which would expose him to a sentence of imprisonment for life without the possibility of parole. (ECF No. 86-10 at 4-5, 9-16.)

## C.    Sentencing and State Postconviction Proceedings

Defense counsel argued for a sentence of 25 years imprisonment with parole eligibility after 10 years and submitted a sentencing memorandum with letters attesting to Brewer's character. The State requested a life sentence and presented photographs of Krasovec's injuries and victim-impact statements from Krasovec's family. The State argued this was the third time the judge sentenced Brewer for a violent crime. Brewer declined allocution. The state district court sentenced Brewer to 10 years to life, as recommended by the PSI report. (ECF Nos. 80-1 at 10, 86-12, 86-14.)

///

Brewer did not appeal his conviction. He filed a *pro se* state postconviction petition for writ of habeas corpus and the State moved to dismiss the petition. Appointed counsel filed a supplemental petition and the State moved to dismiss that petition as well. The state district court dismissed the petition without an evidentiary hearing. Brewer waived counsel for his appeal and the Nevada Court of Appeals affirmed dismissal of the petitions. (ECF Nos. 22-6, 22-11, 22-32, 22-36, 22-39, 23-7, 23-13, 23-17, 23-24, 86-18, 86-19.)

## III.    LEGAL STANDARDS

### A.    Anti-Terrorism and Effective Death Penalty Act (AEDPA)

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or

erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10, 412) (internal citation omitted). State courts are not required to be aware of or cite Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 357 U.S. 3, 8 (2002).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks and citations omitted). The petitioner has the burden of proof. *See Pinholster*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### B.    Ineffective Assistance of Counsel (IAC)

An IAC claim requires a petitioner to demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness"; and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The "likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189. Petitioners bear the burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687-88. "Unless a defendant makes both showings, it cannot be said that the conviction

. . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). Petitioners making an ineffective assistance claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. When considering an IAC claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. In considering such claims, a court is obligated to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. On the performance prong, the issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his or her perspective at the time. *Id.* at 689-90. Strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* On the other hand, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Although IAC claims are examined separately to determine whether counsel was deficient, "prejudice may result from the cumulative impact of multiple deficiencies." *Boyde v. Brown,* 404 F.3d 1159, 1176 (9th Cir. 2005) (quoting *Cooper v. Fitzharris,* 586 F.2d 1325, 1333 (9th Cir. 1978)).

The Supreme Court, applying *Strickland* to counsel's advice in plea negotiations, has held where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). When an IAC claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "[a] reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). The determination whether an attorney's error prejudiced the defendant by causing him to plead guilty rather than go to trial "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which, in turn, depends "in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Lockhart*, 474 U.S. at 59.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" and when applied in tandem, "review is 'doubly so.'" *Harrington*, 562 U.S. at 105 (internal citations omitted); *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'") (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003)).

## IV.   DISCUSSION

### A.   Grounds 1(A) and 1(B)—Failure to Pursue Defenses[3]

In Ground 1(A) Brewer alleges his counsel was ineffective because, before advising him to accept the plea offer, counsel failed to understand and pursue the following theories to support Brewer's claim of innocence: (1) the petechiae in Krasovec's eye was caused by Brewer slapping her face to revive her; (2) Brewer had a psychotic break at the time of the offense; (3) Brewer was intoxicated at the time of the offense; (4) the administration of CPR caused Krasovec's fractured rib; and (5) the medical examiner's report fails to state a definite cause of death and amounts to speculation. Ground 1(B) alleges trial counsel was ineffective in failing to pursue evidence that

---

[3]The Court subdivides and groups Grounds 1(A) and 1(B), as set forth in Respondents' motion to dismiss and answer, for continuity and ease of reference.

Krasovec died from a drug overdose. Respondents contend the state appellate court reasonably applied *Strickland* and *Lockhart* in rejecting the claims. (ECF Nos. 39 at 12-13, 19; 71 at 15-20.)

### 1.    The determinations of the Nevada Court of Appeals

The Nevada Court of Appeals, applying *Strickland* and *Lockhart*, determined the state district court did not err in dismissing Brewer's postconviction petition for writ of habeas corpus because, among other things, Brewer failed to allege facts supporting his claims that counsel was ineffective in failing to understand and pursue defense theories supporting Brewer's claim of innocence before advising him to accept the plea offer:

> First, Brewer claims the district court erred by denying his claims that he received ineffective assistance of counsel. He also claims the district court erred by failing to conduct an evidentiary hearing.
>
> To prove ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a plea of nolo contendere, a petitioner must demonstrate his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and resulting prejudice such that there is a reasonable probability, but for counsel's errors, petitioner would not have pleaded nolo contendere and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58–59 (1985); *Kirksey v. State,* 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). Both components of the inquiry must be shown. *Strickland v. Washington,* 466 U.S. 668, 697 (1984). We give deference to the court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005). To warrant an evidentiary hearing, a petitioner must raise claims supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *Hargrove v. State,* 100 Nev. 498, 502–03, 686 P.2d 222, 225 (1984).
> . . . .
> Brewer next claimed counsel was ineffective for failing to research or investigate the case or to provide any defense to the case . . . . A petitioner alleging that an attorney should have conducted a better investigation must demonstrate what a more thorough investigation would have revealed. *See Molina v. State,* 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Brewer failed to demonstrate what a more thorough investigation would have revealed . . . . Therefore, we conclude the district court did not err by denying [this] claim[] without first conducting an evidentiary hearing.
> . . . .
> Brewer claimed counsel was ineffective for failing to investigate whether he was under the influence of drugs at the time of the offense to show that he was not in his right mind during the incident or during the interrogation. He claimed that had counsel done this investigation, he would not have pleaded nolo contendere. The district court found that Brewer failed to support this claim with specific facts that, if true, would entitle him to relief. Brewer failed to allege how his drug use actually impaired his mind during the incident or during the interrogation. The record supports the

district court's findings, *see Hargrove*, 100 Nev. at 502–03, 686 P.2d at 225, and we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

. . . .

Brewer claimed counsel was ineffective because he was actually innocent and counsel should not have told him to accept the plea offer. Further, he claimed that counsel was ineffective for failing to understand his legal and factual claims. Brewer failed to demonstrate he was actually innocent; therefore, counsel was not deficient for recommending he accept the plea offer. Further, he failed to demonstrate counsel did not understand his legal and factual claims. Therefore, we conclude the district court did not err by denying these claims without first conducting an evidentiary hearing.

(ECF No. 23-24 at 2-4, 9-10.) The state appellate court's determinations are neither contrary to, nor constitute an unreasonable application of, clearly established federal law as determined by the Supreme Court and are not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### 2. Grounds 1(A)(1) and 1(A)(4)—defense that attempts to revive victim caused eye petechiae and rib fracture

Brewer contends trial counsel was ineffective in advising him to accept the plea offer without first understanding and pursuing defenses of innocence based on theories that the petechiae in Krasovec's eye does not prove strangulation; rather, it could have been caused by Brewer slapping Krasovec "pretty hard," and that his performance of CPR caused Krasovec's fractured rib. (ECF No. 39 at 12-13.)

The state appellate court's determinations and application of *Strickland* and *Lockhart* are objectively reasonable. Before Brewer entered his plea, the parties knew he claimed to have slapped Krasovec and attempted to revive her using CPR. The parties also knew the medical examiner discovered petechiae and a fractured rib. *See supra* at pp. 2-3. Brewer did not establish a basis to conclude counsel did not understand Brewer's theory about the causes of those injuries. He also did not allege how those theories would prove his innocence. Reasonable professional judgements can support a limitation of investigation of those theories because, even if it could be proved that Brewer's actions could have caused those injuries, such evidence would not entirely rule-out the medical examiner's opinion that the manner of death was homicide or that Krasovec's injuries were caused by strangulation, blunt force trauma, and impact injury, or that Krasovec

11

suffered traumatic asphyxia and intra-abdominal and retroperitoneal hemorrhage. *See Strickland*, 466 U.S. at 690-91. Moreover, the record shows that Brewer did not immediately seek professional medical assistance or any help for Krasovec. Instead, he called his grandmother after Krasovec's body developed rigor mortis and then lied to police about his whereabouts and the circumstances of Krasovec's death. Thus, argument and evidence at trial that some of Krasovec's injuries may have been caused by efforts to revive Krasovec were as unlikely to change the outcome at trial. *See Lockhart*, 474 U.S. at 59. Under the circumstances, the state appellate court reasonably determined Brewer failed to show his explanations for the injuries established his innocence, that counsel did not understand those theories, or that counsel was deficient in recommending Brewer accept the plea offer without first pursuing those theories. Brewer is not entitled to relief for Grounds 1(A)(1) and 1(A)(4).

### 3.    Ground 1(A)(2)—psychotic episode defense

Brewer alleges counsel was ineffective in advising him to plead without pursuing a defense of innocence based on a theory that during the commission of the offense, Brewer experienced a "psychotic episode," and was not in "normal mode," to negate the mental state required for a murder conviction. (ECF No. 39 at 13.)

The state appellate court's determinations and application of *Strickland* and *Lockhart* are objectively reasonable. The record shows there were no witnesses to the offense other than Brewer and Krasovec. Police were not called to the scene until hours after Krasovec's death, as evidenced by Hamilton's observation of her obvious rigor mortis. Brewer did not establish counsel did not understand this defense theory or establish a basis to conclude counsel could have—long after the offense—obtained independent evidence verifying Brewer experienced a psychotic episode during the commission of the offense that rendered him incapable of forming the mental state required for murder. Under the totality of the circumstances, an objectively reasonable attorney could advise Brewer that, without independent corroborating evidence, Brewer's self-serving testimony that he experienced a psychotic break such that he was not in his

right mind during the offense was unlikely to change the outcome at trial. *See Lockhart*, 474 U.S. at 59. Thus, reasonable professional judgments support the alleged limitation on investigation of a psychotic break defense. *See Strickland*, 466 U.S. at 690-91. Accordingly, the state appellate court reasonably determined Brewer failed to establish counsel did not understand Brewer's psychotic episode theory or that counsel performed deficiently in advising him to accept the plea offer without first pursuing a psychotic break defense. Brewer is not entitled to habeas relief for Ground 1(A)(2).

### 4.    Ground 1(A)(3)—intoxication defense

Brewer alleges his counsel was ineffective in advising him to accept the plea offer without first understanding and pursuing an intoxication defense. (ECF No. 39 at 13.)

At the relevant time, Nevada's voluntary intoxication statute stated:

> No act committed by a person while in a state of voluntary intoxication, shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of the person's intoxication may be taken into consideration in determining the purpose, motive, or intent.

NRS § 193.220; s*ee also Nevius v. State*, 699 P.2d 1053, 1060 (1985) (holding that voluntary intoxication may be considered if "some evidence" supports the theory).

The state appellate court's determinations and application of *Strickland* and *Lockhart* are objectively reasonable. The parties knew Brewer claimed he and Krasovec were high on methamphetamine during the offense. Reasonable professional judgments support the limitation on investigation of an intoxication defense because Brewer fails to establish counsel could have—long after the offense—independently confirmed the strength or effect of Brewer's intoxication levels at the time of the offense. *See Strickland*, 466 U.S. at 690-91. Moreover, because an intoxication defense is not a complete defense to any crime in Nevada, and a jury may, but is not required to, consider intoxication in determining purpose, motive, and intent, Brewer fails to establish such evidence was likely to change the outcome of a trial. *See Lockhart*, 474 U.S. at 59. Brewer thus fails to

show the state appellate court's determinations and applications of clearly established federal law were unreasonable. Brewer is not entitled to relief on Ground 1(A)(3).

### 5. Ground 1(A)(5)—no definitive cause of death

Brewer alleges trial counsel's advice to accept the plea offer was ineffective because there is "[n]o real evidence of murder" and the medical examiner's report speculated Krasovec had a bruised kidney and died from asphyxia. (ECF No. 39 at 13.)

The state appellate court's determinations and application of *Strickland* and *Lockhart* are objectively reasonable. It appears Brewer failed to submit the medical examiner's report to the state courts and his claim is contradicted by the stipulated facts in the plea memorandum, which state the medical examiner concluded, "[t]he manner of death was homicide," and "[t]he cause of death was multiple injuries" due to "blunt force trauma including strangulation and impact injury causing traumatic asphyxia and intra-abdominal and retroperitoneal hemorrhage." (ECF No. 86-9 at 10.) Brewer did not provide any basis, which if true, would establish the medical examiner's opinion amounts to speculation. The state appellate court reasonably determined Brewer did not show counsel failed to understand his claims, or that reasonable professional judgment would not support the limitation on investigation. The state appellate court reasonably determined Brewer did not show counsel's advice to accept the plea offer was deficient as he did not show a challenge to the medical examiner's opinion about the manner and cause of death was likely to change the trial outcome. *See Lockhart*, 474 U.S. at 59; *Strickland*, 466 U.S. at 690-91. Brewer is not entitled to federal habeas relief for Ground 1(A)(5).

### 6. Ground 1(B)(1)—defense that victim died of a drug overdose

Brewer alleges counsel was ineffective in advising him to plead without first pursuing evidence that Krasovec died of a drug overdose. (ECF No. 39 at 12-13, 19.)

The state appellate court's determinations and application of *Strickland* and *Lockhart* are objective reasonable. Brewer told police Krasovec consumed methamphetamine on the day she died. Apart from Brewer's self-serving statements,

Brewer developed no evidence in the state court record, such as a toxicology or medical examiner's report, showing Krasovec consumed a lethal dose of drugs on the day she died. Although Brewer referred to reports that allegedly documented Krasovec's consumption of drugs, neither he nor his postconviction counsel presented any of the reports Brewer referenced as evidence to support that claim. Brewer's contradictory allegations in the state courts about the existence of a toxicology report, and speculation concerning its contents, falls short of the requirements necessary to prove counsel's performance fell outside the wide range of professionally competent assistance under *Strickland*. Thus, Brewer presented no basis to conclude his counsel was unreasonable in failing to conduct such an investigation or that such an investigation was likely to change the outcome of the trial. *See Lockhart*, 474 U.S. at 59; *Strickland*, 466 U.S. at 690-91. Even assuming a toxicology or medical examiner's report exists and indicates Krasovec died with high levels of drugs in her system, such evidence may not prove she consumed a lethal dose and may not rule-out a verdict finding she was murdered while she was under the influence of drugs. Thus, the state appellate court reasonably determined Brewer failed to demonstrate his innocence, that counsel failed to understand his legal and factual claims, or that counsel's recommendation to accept the plea offer without first pursuing evidence that Krasovec died of a drug overdose, was deficient performance. Brewer is thus not entitled to federal habeas relief for Ground 1(B)(1).

**B.    Ground 1(C)—Coercion to Accept the Plea Offer**

**1.    Ground 1(C)(1)—coercion to conceal trial unpreparedness**

Brewer alleges trial counsel coerced him to accept the plea offer to conceal counsel's unpreparedness for trial, claiming counsel "refused to do any investigation . . . look into the forensics of the State's facts . . . refused to produce witnesses for the defense . . . talk with the prosecutor's witnesses . . . [and] refused to file any motions . . . ." Respondents contend the record belies this claim. (ECF Nos. 39 at 19, 71 at 21-27.)

A habeas petitioner bears the burden of establishing his guilty plea was not voluntary and knowing. *See Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citing

*Parke v. Raley,* 506 U.S. 20, 31-34 (1992)). The standard for determining the validity of guilty pleas is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). Voluntariness of a plea is assessed using the following standard:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Id.* at 755. "[T]he representations of the defendant, his lawyer, and the prosecutor [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). In the context of a challenge to a guilty plea, "the subsequent presentation of conclusory allegations unsupported by specifics" for the purpose of unwinding a plea, "is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

The state appellate court determined Brewer stated he was not coerced and failed to show counsel was unprepared or what counsel could have done to prepare for trial:

> Brewer claimed counsel was ineffective by coercing his nolo contendere plea to conceal he was not prepared for trial. Brewer failed to demonstrate he was coerced because he failed to demonstrate counsel was not prepared for trial. As stated above, Brewer failed to allege, with specificity, what counsel could have done to prepare for trial. Further, Brewer in the plea agreement and at the change of plea hearing, informed the district court he was not coerced into pleading nolo contendere. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 24.) The state appellate court's determination is neither contrary to, nor constitutes an unreasonable application of, clearly established federal law as

1   determined by the Supreme Court and is not based on an unreasonable determination of

2   the facts in light of the state court proceeding.

3       Brewer entered his plea during the time scheduled for arraignment in the state

4   district court. Trial was not imminent. Brewer fails to show how counsel was at that point

5   unprepared, or what counsel failed to do to prepare for trial. Brewer also fails to specify

6   on what basis unpreparedness for trial coerced him to accept the plea offer. The notion

7   that his counsel coerced the plea is belied by Brewer's signed plea memorandum and

8   statements at the change-of-plea hearing that his plea was "voluntary and is not the result

9   of any threats, coercion or promises of leniency," and no one coerced him or made any

10  statement to get him to accept the plea offer and enter his plea. (ECF Nos. 86-9 at 7; 86-

11  10 at 10-11.) Thus, Brewer is not entitled to habeas relief for Ground 1(C)(1).

12          **2.       Ground 1(C)(2)—coercion by threats about other charges**

13      Brewer contends trial counsel coerced his plea by telling him the State would

14  pursue a life sentence as a habitual criminal based on other "unwarranted" charges.

15  Respondents contend the claim is belied by the plea memorandum and plea canvass.

16  (ECF Nos. 39 at 21, 71 at 24-29.)

17      The Nevada Court of Appeals determined Brewer failed to establish trial counsel's

18  "candid advice" about the consequences of his decision constitutes deficient

19  performance:

20          Brewer claimed counsel was ineffective for coercing him into
            pleading nolo contendere by threatening him with unwarranted charges if
21          he did not accept the plea offer, and promising a lesser sentence and other
            charges would be dismissed if he did accept the plea offer. Candid advice
22          about the likely outcome of accepting a plea offer is not evidence of deficient
            performance. *See Dezzani*, 134 Nev. at 69, 412 P.3d at 62. Here, Brewer
23          did receive a lesser sentence than he could have had he been convicted of
            first-degree murder. Further the State dropped charges of possession of a
24          firearm by a prohibited person and battery by a prisoner. Finally, Brewer
            failed to allege what unwarranted charges he was being threatened with.
25          Therefore, we conclude the district court did not err by denying this claim
            without first conducting an evidentiary hearing.
26

27  (ECF No. 23-24 at 24.) The state appellate court's determination is neither contrary to,

28  nor constitutes an unreasonable application of, clearly established federal law as

                                         17

determined by the Supreme Court and is not based on an unreasonable determination of the facts in light of the state court proceedings.

In his plea memorandum, Brewer stipulated the State could prove beyond a reasonable doubt he "did willfully, unlawfully, and with malice aforethought, kill and murder Kirsten Krasovec . . . by means of blunt force trauma including strangulation and impact injury, thereby inflicting mortal injuries" resulting in her death. (ECF No. 86-9 at 3.) As a condition of the plea agreement, the State dismissed the open murder charge, which is punishable by life imprisonment without possibility of parole. *See* NRS § 200.030(4)(b)(1). The state also dismissed, as part of the plea agreement, the charges of possession of a firearm by a felon, and battery on a prisoner. Although Brewer may or may not have had sufficient prior convictions to make him eligible for an habitual criminal sentence of life imprisonment without the possibility of parole, he acknowledged at his change-of-plea hearing that he chose to plead because he believed the prosecution could otherwise convict him of first-degree murder, which would expose him to a sentence of imprisonment for life without the possibility of parole. (ECF No. 86-10 at 15-16.) Brewer also verbally confirmed to the state district court that no one stated anything, other than plea negotiations, to make him choose to plead. Under the circumstances, it is reasonable to conclude Brewer's decision to plead represents a voluntary and intelligent choice among the alternative courses of action open to him. *See Alford*, 400 U.S. at 31. Thus, Brewer fails to show counsel was deficient, or that counsel coerced the plea by advising Brewer of his exposure to a sentence of life without the possibility of parole if he did not accept the plea offer. *See, e.g.*, *Iaea v. Sunn*, 800 F.2d 861, 867 (9th Cir. 1986) ("Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion."); *Aguilar v. Field*, 423 F.2d 271 (9th Cir. 1970) (holding claim that petitioner was motivated by counsel's advice to plead guilty to receive a shorter sentence did not warrant a hearing to determine whether the plea was coerced, in the absence of contention that petitioner's will was overborne or that the plea was not knowingly and willingly entered). Brewer is not entitled to habeas relief for Ground 1(C)(2).

### 3. Ground 1(C)(3)—coercion based on inability to pay

Brewer alleges trial counsel coerced the plea because Brewer could no longer pay retained counsel's fee, leaving him to either accept the plea offer or proceed with a public defender. Brewer says this amounted to coercion based on a conflict of interest because he believed the public defender was not interested in defending him at trial. Respondents contend Brewer fails to establish counsel had a conflict of interest or coercion as Brewer could have gone to trial with a public defender. (ECF Nos. 39 at 22-23, 71 at 25-29.)

The Sixth Amendment right to counsel includes the right to assistance by a conflict-free attorney. *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). "[T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350. To show an actual conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties—a petitioner "must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002); *see also McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003) (stating a petitioner "must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client").

A lawyer's pecuniary interests may "create a theoretical conflict of interest, [but] do not typically create actual conflicts under *Cuyler.*" *Bonin v. Calderon*, 59 F.3d 815, 826-828 (9th Cir. 1995) (affirming that if "a mere 'potential' or 'theoretical' conflict does affect an attorney's representation in a particular case," the defendant cannot rely on *Cuyler* and obtain relief merely upon a showing of "adverse effect," but must instead make the showing required by *Strickland*). Although a "defendant's failure to pay fees may cause some divisiveness between attorney and client," courts generally presume that counsel

19

will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. (1998)). *But see Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995) (holding the record was unclear as to whether a defendant decided to plea, rather than go to trial, because of a conflict of interest where it was alleged his attorney said he would not take the defendant's case to trial without being paid the remaining $8,000 the defendant owed him, and remanding for an evidentiary hearing to address whether the attorney's pecuniary interests adversely affected his performance).

The Nevada Court of Appeals determined Brewer failed to show he was coerced to plead because Brewer acknowledged the option to proceed to trial with a public defender and did not show retained counsel was placed in a situation conducive to divided loyalties:

> Brewer claimed he was coerced into pleading nolo contendere because there was an actual conflict of interest between counsel and him. Specifically, Brewer claimed counsel required Brewer to pay his fee before he would continue to trial. An actual conflict exists "when an attorney is placed in a situation conducive to divided loyalties." *Clark v. State*, 18 Nev. 324, 326, 831 P.2d 1374, 1376 (1992). Brewer failed to demonstrate counsel was placed in a situation conducive to divided loyalties. Further, Brewer stated in his petition that he knew if he did not pay, his choices were to have the public defender or accept the plea offer. Therefore, because Brewer knew he could have proceeded to trial with the public defender, Brewer failed to demonstrate he was coerced into pleading nolo contendere. Accordingly, we conclude the district court did not err by denying this claim without first holding an evidentiary hearing.

(ECF No. 23-24 at 10-11.) The state appellate court's determination is neither contrary to, nor constitutes an unreasonable application of, clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts in light of the state court proceeding.

Brewer did not show he owed substantial money to retained counsel or that debt influenced counsel's representation. Brewer admitted he was not coerced to enter his plea and could opt to pursue his case with a public defender. The record shows Brewer's choice to plead was a voluntary and intelligent choice among the alternative courses of action open to him rather than the result of coercion or a conflict of interest with counsel.

Brewer did not establish counsel was deficient or his plea was coerced by a conflict with his counsel. Brewer is not entitled to federal habeas relief for Ground 1(C)(3).

### C.   Ground 2—Failure to Investigate and File Motions

Brewer alleges trial counsel provided ineffective assistance by (1) failing to file motions for a preliminary hearing; (2) failing to seek discovery; (3) failing to investigate Brewer's mental health history; and (4) advising that Brewer must prove his innocence. (ECF No. 39 at 15-19.)

#### 1.   Ground 2(A)(1)—failure to request timely preliminary hearing

Brewer alleges trial counsel was ineffective for failing to request a preliminary hearing within 15 days of Brewer's arraignment in violation of NRS § 171.196(2). He contends counsel was ineffective by, without Brewer's consent, failing to object to a 13-month delay before arraignment in the state district court, in violation of NRS § 178.556. He claims this resulted in a violation of the right to a speedy trial under the Sixth Amendment and NRS § 178.556, and the right to due process under the Fourteenth Amendment. Respondents contend Brewer did not establish trial counsel's performance was deficient or prejudicial. (ECF Nos. 39 at 15, 71 at 31-33.)

Under NRS § 171.196(2), "[i]f the defendant does not waive [preliminary] examination, the magistrate shall hear the evidence within 15 days, unless for good cause shown the magistrate extends such time." *See Bustos v. Sheriff, Clark County*, 491 P.2d 1279, 1280-81 (1971) (holding that prosecutor should be prepared to present his case to a magistrate at the time scheduled or show good cause for an inability to do so).

Under NRS § 178.556, a court may dismiss a complaint if no indictment or information is filed within 15 days after a person is held to answer for an offense or dismiss an indictment or information if trial is not postponed and defendant is not brought to trial within 60 days after arraignment. There is no fixed time when a defendant's fundamental constitutional right to a speedy trial is violated; the right is assessed in relation to the circumstances of each case. *See Furbay v. State*, 998 P.2d 553, 555-56 (2000) (citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *Moore v. Arizona*, 414 U.S. 25, 26 (1973)).

21

When determining whether a defendant's fundamental constitutional right to a speedy trial was violated, a court considers four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant [that is attributable to the delay]. *Id.* (citing *Barker*, 407 U.S. at 530); *see also, e.g.*, *Sessions v. State*, 890 P.2d 792, 794 n.4 (1995) (holding a defendant's statutory right to speedy trial was not violated where the State demonstrated good cause for delay and defendant failed to address the issue of prejudice attributable to delay); *Redmen v. State*, 828 P.2d 395, 398 (1992) (holding there was no violation of the right to a speedy trial as the result of postponement of a trial date where neither prosecution nor defense was prepared for trial).

The state appellate court determined Brewer's claim that counsel was ineffective in consenting to postponement of the preliminary hearing without Brewer's consent and failing to challenge the justice court proceedings was speculative and that he failed to show the delay was unnecessary or that the delay caused him prejudice:

> Brewer claimed counsel was ineffective for postponing the preliminary hearing without his consent. Brewer claimed had counsel not caused his preliminary hearing to be postponed, the State would not have had the coroner's report before trial and he would not have pleaded nolo contendere. Brewer failed to allege specific actions counsel took that caused the preliminary hearing to be postponed; and therefore, failed to allege specific facts to support his claim that counsel was deficient.

> [FN 1] Brewer was represented by counsel below and Brewer failed to make the justice court records part of the record in the district court.

> Further, his claim regarding prejudice was speculative. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 3-4.) The state appellate court's application of *Strickland's* performance prong is objectively reasonable. Brewer did not demonstrate counsel failed to contest postponement of the preliminary hearing in the justice court. Brewer alleges the delay was due to the medical examiner's inability to finalize his report, but Brewer fails to show those circumstances did not present good cause for the prosecutor to seek postponement. An objectively reasonable attorney could

view a motion for an earlier preliminary hearing as futile and not object to postponement. Brewer failed to show counsel's performance fell outside the wide range of professionally competent assistance under *Strickland* and he is not entitled to federal habeas relief for Ground 2(A)(1).

### 2. Ground 2(A)(2)—failure to file a motion for discovery

Brewer alleges trial counsel provided ineffective assistance and violated due process by failing to file a motion for discovery before the preliminary hearing. He claims the forensic report was not produced for "10 months" and no discovery showed "probable cause" until "months went by." Respondents contend the state appellate court reasonably determined counsel was not ineffective. (ECF Nos. 39 at 15-16, 71 at 33-34.)

NRS § 171.1965 requires a Nevada prosecutor to produce to the defense certain discovery that is "within the possession or custody of the prosecuting attorney" at least five days prior to a preliminary hearing. For good cause, a prosecutor may obtain postponement of a preliminary hearing, thereby delaying the obligation to produce discovery. *See supra* at pp. 21-22.

The Nevada Court of Appeals determined Brewer failed to demonstrate a lack of discovery was caused by his counsel's deficient performance in failing to seek discovery:

> Brewer claimed counsel was ineffective for failing to file a motion for the production of discovery within the time frames of the statute, and had counsel filed a timely motion, he would not have pleaded nolo contendere. Brewer failed to demonstrate he was unable to receive discovery based on counsel's failure to file a timely discovery motion. Therefore, he failed to demonstrate counsel was deficient. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 4.) The state appellate court's determinations and applications of *Strickland* and *Lockhart* are objectively reasonable. Brewer did not show counsel failed to timely request discovery in the state justice court. He did not show requests for discovery more than five days before the preliminary hearing would have resulted in earlier discovery as he admits the state prosecutor would not have possessed or had control of certain discoverable items, *i.e.*, the medical examiner's report. Brewer also

confirmed, at his change-of-plea hearing, that he reviewed and discussed all of the discovery with counsel before entering his plea. (ECF No. 86-10 at 8.) Brewer thus fails to demonstrate counsel's actions were deficient because they did not prevent Brewer from making an informed choice whether to plead or go to trial. Brewer is not entitled to federal habeas relief for Ground 2(A)(2).

### 3.   Ground 2(A)(3)—failure to secure an autopsy expert

Brewer alleges trial counsel provided ineffective assistance by failing to obtain an independent autopsy expert, thereby depriving Brewer the ability to test the veracity of the State's autopsy report and forcing his reliance on a one-sided report. Respondents contend the record supports the state appellate court's determination that counsel's performance was neither deficient nor prejudicial. (ECF Nos. 39 at 16-17, 71 at 35.)

The state appellate court determined Brewer's claims are speculative because he failed to demonstrate an expert or expert report would establish his innocence or cause him to elect trial rather than accept the plea offer:

> Brewer also claimed counsel was ineffective for failing to secure a defense expert to do an autopsy or produce a coroner's report that would have proven his innocence. Further, he claimed counsel was ineffective for allowing the victim's body to be cremated before a defense expert could examine the body. Brewer claimed that, had counsel done these actions, he would not have pleaded nolo contendere. Other than speculation, Brewer failed to demonstrate an expert's report or a review of the victim's body would have supported his claim that he was actually innocent. Therefore, Brewer failed to demonstrate counsel was deficient or a reasonable probability he would not have pleaded nolo contendere had counsel secured a defense expert. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 6.) The state appellate court's determination, and applications of *Strickland* and *Lockhart* are objectively reasonable. Brewer did not show what an independent autopsy expert and expert review would prove or how it would call into question the veracity of the medical examiner's report concerning Krasovec's death. Thus, Brewer fails to show counsel's performance fell below an objective standard of reasonableness or a reasonable probability that but for counsel's failure to do so, counsel would not have advised him to plead, or that Brewer would have instead on going to trial.

24

*See Lockhart*, 474 U.S. at 59. Brewer is not entitled to federal habeas relief for Ground 2(A)(3).

### 4.    Ground 2(A)(6)—failure to review coroner's lab records

Brewer alleges trial counsel was ineffective because, before advising Brewer to plead, counsel failed to examine and discuss with him, the medical examiner's reports. (ECF Nos. 39 at 16, 71 at 36.)

The Nevada Court of Appeals determined Brewer failed to demonstrate counsel's performance was deficient or prejudicial because he stated he reviewed the discovery:

> Brewer claimed counsel was ineffective for failing to discuss the autopsy report with him prior to entry of his nolo contendere plea. Brewer informed the district court at the change of plea hearing that he had reviewed all of the discovery with counsel prior to pleading nolo contendere. Therefore, he failed to demonstrate counsel was deficient. Further, Brewer failed to demonstrate a reasonable probability he would not have pleaded nolo contendere had counsel reviewed the autopsy report with him. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 10.) The state appellate court's determination, and applications of *Strickland* and *Lockhart* are objectively reasonable. The record shows Brewer confirmed he reviewed all discovery with counsel before entering his plea. *See Lockhart*, 474 U.S. at 59. Brewer is not entitled to habeas relief for Ground 2(A)(6).

### 5.    Ground 2(A)(7)—failure to seek preservation of the body

Brewer alleges trial counsel provided ineffective assistance by failing to file a motion to preserve Krasovec's body for examination by a defense expert so they could test the veracity of the State's autopsy report and not rely upon a one-sided report. Respondents contend the state court of appeals reasonably concluded Brewer failed to demonstrate deficient or prejudicial performance. (ECF Nos. 39 at 17, 71 at 35-36.)

The state appellate court determined Brewer failed to demonstrate review of Krasovec's body supported his claim of innocence or a reasonable probability he would have gone to trial, rather than plead, but for counsel's failure to secure the body for review. *See supra* at p. 24. The state appellate court's determination, and applications of *Strickland* and *Lockhart* are objectively reasonable. Brewer speculated that inspection of

Krasovec's body would provide information useful to his defense, but did not allege specific facts that, if true, would render counsel's failure to move to preserve Krasovec's body for a defense expert examination objectively unreasonable. Although elsewhere in his Petition he claims Krasovec had high amounts of drugs in her system and died from an overdose, the presence of high amounts of drugs does not rule-out murder, particularly in light of Krasovec's substantial injuries, the nature of the injuries, Brewer's failure to seek help for Krasovec, and his lies concerning his whereabouts at the time of her death. Brewer thus fails to establish there is any factual basis to conclude there is a substantial and reasonable probability that, but for counsel's omission, Brewer would not have pleaded guilty and would have insisted on going to trial. *See Lockhart*, 474 U.S. at 59. The state appellate court's determination that Brewer's claim is based on speculation was objectively reasonable. Brewer is not entitled to federal habeas relief for Ground 2(A)(7).

### 6.    Ground 2(B)(1)—failure to investigate mental health

Brewer alleges his counsel was ineffective in failing to first investigate Brewer's mental health history to establish a defense that Brewer did not have the requisite mental state to commit premeditated murder before advising him to accept the plea offer. Brewer claims he "freaked out" when Krasovec went unconscious and fell off the bed, and he tried to revive her with CPR, but he was not in "normal mode." Respondents contend the state court of appeals reasonably concluded Brewer did not allege facts demonstrating trial counsel's performance was deficient or prejudicial. (ECF Nos. 39 at 18-21, 71 at 38-40.)

The Nevada Court of Appeals determined Brewer failed to allege the nature of his mental health history and how it would provide a defense to the charges:

> Brewer claimed counsel was ineffective for failing to research Brewer's mental health history to establish a defense that would show there was no premeditation. Brewer claimed that had counsel researched his mental health history, he would not have pleaded nolo contendere. A petitioner alleging that an attorney should have conducted a better investigation must demonstrate what a more thorough investigation would have revealed. *See Molina* [*v. State*], 120 Nev. [185,] 192, 87 P.3d [533,] 538 [2004]. Brewer failed to allege what his mental health history was and how that would have provided a defense to the charges. Therefore, Brewer failed to support this claim with specific facts that, if true, would entitle him

26

to relief. *See Hargrove* [*v. State*],100 Nev. [498,] 502–03, 686 P.2d [222,] 225 [1984]. Accordingly, the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 5.) The state appellate court's determinations, and applications of *Strickland* and *Lockhart* are objectively reasonable. The state-court record shows counsel argued at sentencing that Brewer was "self-medicating" since childhood, had an addiction, and had difficulty with anger management. (ECF No. 86-12.) The PSI states Brewer reported he was "diagnosed with Antisocial Personality Disorder in 2012," "participated in Mental Health Court," and, while he was previously prescribed a "cocktail" of medications, he was no longer prescribed medications for mental health. (ECF No. 80 at 4.) Brewer fails to show the results of a more thorough investigation of his mental health history would establish a defense to the mental state required for murder. Thus, he fails to establish trial counsel's performance was outside the wide range of professionally competent assistance, or that if counsel investigated Brewer's mental health history, there is a reasonable probability counsel would have advised Brewer to go to trial rather than accept the plea offer or Brewer would have insisted on trial rather than plead. *See Lockhart*, 474 U.S. at 59. Brewer is not entitled to federal habeas relief for Ground 2(B)(1).

### 7.    Ground 2(B)(2)—advice on the burden of proof

Brewer alleges counsel was ineffective because, before advising him to accept the plea offer, counsel advised Brewer was obligated to prove his innocence. Respondents contend Brewer acknowledged the State had the burden to prove each element of the crimes alleged beyond a reasonable doubt and admitted he pleaded because the State had evidence to convict him of first-degree murder. (ECF Nos. 39 at 18-19, 71 at 40-41.)

The Nevada Court of Appeals determined Brewer failed to establish counsel's performance was deficient because counsel's candid advice about the realities of trial is not deficient performance and Brewer was informed the State had the burden of proof:

> Brewer also claimed counsel was ineffective for improperly informing Brewer that he had to prove his innocence rather than the State having to prove each element of the crime. Specifically, he claimed counsel told him, "it is not the truth that is important, but it's what you can prove." Brewer claimed that had counsel properly informed him he would not have pleaded nolo contendere. The district court found that frank advice about the realities

27

of trial was not evidence of deficient performance. Further, Brewer was informed in the plea agreement and at the plea canvass that the State had the burden of proof at trial. The record supports the decision of the district court, *see Dezzani v. Kern and Associates, Ltd.*, 134 Nev. 61, 69, 412 P.3d 56, 62 (2018) (noting that one of the roles of an attorney is to provide candid advice to his or her client), and we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 23-24 at 7-8.) The state appellate court's determination that Brewer failed to establish trial counsel's performance was deficient under *Strickland* is objectively reasonable. Brewer's signed plea memorandum waived his right to trial by jury "at which trial the State would have to prove" his guilt "of all elements of the offenses beyond a reasonable doubt." (ECF No. 86-9 at 3.) Brewer acknowledged in the plea memorandum that he understood the charges against him and "the elements of the offense which the State would have to prove beyond a reasonable doubt at trial." (*Id.*) In his plea memorandum and at his change of plea hearing, he admitted "that the State possesses sufficient evidence which would result" in his conviction for murder. (ECF Nos. 86-9 at 3, 86-10 at 15.) Consequently, the record belies Brewer's claim, and the state appellate court's determination that Brewer fails to establish ineffective assistance of counsel under *Strickland* is objectively reasonable. Brewer is not entitled to federal habeas relief for Ground 2(B)(2).

### D.     Trial Counsel's Conduct Was Not Deficient or Prejudicial as a Whole

In *Browning v. Baker*, the Ninth Circuit held, "[w]hile an individual claiming [ineffective assistance of counsel] 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,'" courts must "consider[] counsel's conduct *as a whole* to determine whether it was constitutionally adequate." 875 F.3d 444, 471 (9th Cir. 2017). On consideration of the merits of Brewer's IAC claims as a whole, the Court concludes he does not show that, under the circumstances, trial counsel's actions or omissions and advice to accept the plea offer were deficient and prejudicial or that he received constitutionally inadequate assistance from counsel in denial of due process.

///

## V.   MOTION TO SEAL EXHIBIT 11

Respondents filed an unopposed motion for leave to file Exhibit 11 under seal. (ECF No.79.) Under Nevada law, the PSI is "confidential and must not be made a part of any public record." NRS § 176.156(5). Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect Petitioner's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. The Motion (ECF No. 79) is granted.

## VI.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Brewer. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court therefore has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under Section 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Applying this standard, a certificate of appealability is not warranted for any of the remaining grounds in the Petition as set forth in this order or for Brewer's IAC claims as a whole. *See Slack,* 529 U.S. at 484; *Browning*, 875 F.3d at 471. A COA is also denied for all other grounds as jurists of reason would not find it debatable or wrong whether the Court is correct in its procedural ruling dismissing Grounds 1(B)(3), 1(B)(4), and 2(B)(3) as untimely; Grounds 2(C), 3(A), 3(B), 3(C), and 3(D) as non-cognizable; Grounds 2(B)(4) and 2(B)(5) as duplicative; and Grounds 1(A)(6), 1(B)(2), 2(A)(4), and 2(A)(5) as unexhausted, for the reasons stated in the Court's prior order (ECF Nos. 60, 65).

///

## VII.    CONCLUSION

It is therefore ordered that Grounds 1(A)(1)-(A)(5), 1(B)(1), 1(C)(1)-(C)(3), 2(A)(1)-(A)(3), 2(A)(6)-(A)(7), and 2(B)(1)-(B)(2) of the Petition are denied on the merits; and the Petition (ECF No. 39) is denied with prejudice.

It is further ordered that a certificate of appealability is denied as to all grounds of the Petition.

It is further ordered that all requests for an evidentiary hearing are denied.

It is further ordered that Respondents' motion for leave to file documents under seal (ECF No. 79) is granted.

It is further ordered that Exhibit 11 (ECF No. 80-1) is considered properly filed under seal.

It is further ordered that Respondents' unopposed motion for enlargement of time to file supplemental documents (ECF No. 81) is granted *nunc pro tunc*.

It is further ordered that the corrected exhibits filed as ECF Nos. 82-86 are timely filed.

The Clerk of Court is further directed to substitute Tim Garrett for Respondent Warden Baker.

The Clerk of Court is further directed to enter judgment accordingly and close this case.

DATED THIS 4th day of December 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE